# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M T S, INCORPORATED, a California corporation, et al.,[1] | Case No. 04-10394 (PJW) |
| | Jointly Administered |
| Debtors. | Re: Docket No. 10 |

**FINAL AGREED ORDER PURSUANT TO
11 U.S.C. §§ 361 AND 363, FED. R. BANKR. P. 4001(b) AND 9014, AND
DEL. BANKR. L.R. 4001-2 AUTHORIZING DEBTORS' USE OF
CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION THEREFOR**

This Final Agreed Order Pursuant to 11 U.S.C. §§ 361 and 363, Fed. R. Bankr. P. 4001(b) and 9014, and Del. Bankr. L. R. 4001-2 Authorizing Debtors' Use of Cash Collateral and Providing Adequate Protection Therefor (the "Final Agreed Order") is dated as of February 27, 2004 upon the motion of M T S, Inc., a California corporation, its parent holding company Tower Records, Incorporated, a Delaware corporation, and their direct and indirect wholly-owned subsidiaries, Three A's Holdings, L.L.C., a Delaware limited liability company, 8775 Sunset, Inc., a California corporation, Columbus & Bay, Inc., a California corporation, Jeremy's Holdings, LLC, a Delaware limited liability company, R.T. Records, Incorporated, a California corporation, Tower Direct LLC, a Delaware limited liability company, 33rd Street Records, Incorporated, a Delaware corporation, T.R. Services, Incorporated, a California corporation, Ireland TR, Incorporated, a California corporation, Pipernick Corp., a Delaware corporation, TR Argentina, Incorporated, a California corporation, TR Israel, Incorporated, a California

---

[1] The Debtors are the following entities: Tower Records, Incorporated, M T S, Incorporated, Three A's Holdings, L.L.C., 8775 Sunset, Inc., Columbus & Bay, Inc., Jeremy's Holdings, LLC, R.T. Records, Incorporated, Tower Direct LLC, 33rd Street Records, Incorporated, T.R. Services, Incorporated, Ireland TR, Incorporated, Pipernick Corp., TR Argentina, Incorporated, TR Israel, Incorporated, TR Mexico, Incorporated, and Tower Graphics, Incorporated.

RLF1-2711038-1

corporation, TR Mexico, Incorporated, a California corporation, and Tower Graphics, Incorporated, a California corporation, each as a debtor and debtor-in-possession (collectively, the "Debtors") for interim and final orders under 11 U.S.C. §§ 361 and 363, Fed. R. Bankr. P. 4001(b) and 9014, and Del. Bankr. L. R. 4001-2 authorizing the use of cash collateral and providing adequate protection therefor (the "Motion"); and is consented to and submitted by The CIT Group/Business Group, Inc., as administrative agent and collateral agent (in such capacity, "CIT") for the lenders (the "CIT Lenders") party to that certain Loan and Security Agreement, dated as of October 9, 2002 (as amended, modified, and supplemented from time to time, the "CIT Loan Agreement").

This Court having considered the Motion; the affidavit of E. Allen Rodriguez; the pleadings on file in these cases; and the record made before this Court; hereby makes the following findings of fact and conclusions of law:

IT IS HEREBY FOUND THAT:

A. This Court has jurisdiction to approve this Final Agreed Order pursuant to 28 U.S.C. §§ 157 and 1334; this is a core proceeding pursuant to 28 U.S.C. § 157(b); and venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. On February 9, 2004 (the "Petition Date"), the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

C. Prior to the Petition Date, pursuant to the CIT Loan Agreement, the CIT Lenders made loans and other financial accommodations to and for the benefit of the Debtors. The CIT Lenders assert that as of the Petition Date, the Debtors were

2

RLF1-2711038-1

obligated and indebted to the CIT Lenders under the CIT Loan Agreement in the aggregate principal amount of approximately $68 million; and certain additional unpaid interest, fees and expenses (the "CIT Indebtedness").

D.  To secure the obligations owing under the CIT Loan Agreement, CIT and the CIT Lenders assert that the Debtors granted to the CIT Lenders, pursuant to the CIT Loan Agreement and other mortgages and collateral documents, a first priority security interest (collectively, the "CIT Liens") in substantially all of the Debtors' assets (the "Collateral"), including substantially all of the Debtors' personal and real property, fixtures, accounts, general intangibles, goods, inventory, equipment, chattel paper, instruments, documents, deposit accounts, letters of credit, banker's acceptances, commercial tort claims, life insurance policies, receivables, records, all products and proceeds of the foregoing, and all cash proceeds and all other cash equivalents and cash collateral as that term is defined in Bankruptcy Code Section 363(a) (the "Cash Collateral").

E.  Prior to the Petition Date, pursuant to that certain Amended and Restated Term Loan Agreement, dated as of October 9, 2003 by and between the Debtors, JPMorgan Chase Bank, as administrative agent and collateral agent (in such capacity, "JPMC") and the lenders (the "JPMC" Lenders"; CIT, the CIT Lenders, JPMC and the JPMC Lenders are collectively referred to herein as the "Secured Creditors") party thereto (as amended, modified, and supplemented from time to time, the "JPMC Credit Agreement"), the JPMC Lenders made loans and other financial accommodations to and for the benefit of the Debtors. The JPMC Lenders assert that as of the Petition Date, the Debtors were obligated and indebted to the JPMC Lenders under the JPMC Credit Agreement in the aggregate principal amount of approximately $24.5; accrued and unpaid interest in the amount of approximately $400,000; and unpaid fees and expenses.

F.  To secure the obligations owing under the JPMC Credit Agreement, JPMC and the JPMC Lenders assert that the Debtors granted to the JPMC

3

Lenders, pursuant to the JPMC Credit Agreement and other mortgages and collateral documents, security interests (collectively, the "JPMC Liens") in the Collateral.

G. Pursuant to that certain Amended and Restated Term Loan Agreement, dated as of October 9, 2002 (as amended, modified, and supplemented from time to time, the "JPMC Credit Agreement") pursuant to Section 2(e) of that certain Intercreditor Agreement, dated as of October 9, 2002 by and between JPMC and CIT (the "Intercreditor Agreement"; a true and correct copy of which is attached as Exhibit A to the Declaration of E. Allen Rodriguez previously submitted in connection with the Motion), the JPMC Liens are subordinate and junior to the CIT Liens. The subordination provisions, as well as the other provisions of the Intercreditor Agreement, apply in the Debtors' bankruptcy proceedings.

H. The Intercreditor Agreement further provides that "[t]o the extent that [CIT] or [CIT] Lenders give any waivers or consents under, or agree to amend, the representations or warranties, affirmative or negative covenants, Events of Default, remedies or definitions (to the extent such definitions are used in such representations and warranties, covenants or Events of Default) set forth in the [CIT Loan Agreement and related agreements], the [JPMC Lenders] will give waivers or consents to, or agree to amend, as applicable, the corresponding provisions of the [JPMC Credit Agreement and related agreements] to the extent that such corresponding provisions exist . . . ." See Intercreditor Agreement, p. 4.

I. In addition, Section 9 of the Intercreditor Agreement provides that the CIT Lenders are not prohibited from taking any action with respect to the CIT Indebtedness or the Collateral, and among those actions the CIT Lenders may take is increasing the amount of the CIT Indebtedness or otherwise changing the terms with respect to the CIT Indebtedness. Section 11 of the Intercreditor Agreement further provides that the CIT Lenders may extend, renew, modify or amend any terms of the CIT Indebtedness, or the security therefore, without the consent of the JPMC Lenders and

4

without affecting in any way the Intercreditor Agreement.

J.   Pursuant to that certain Joint Plan of Reorganization (the "Pre-Packaged Plan"), filed by the Debtors concurrently with the Motion, the Debtors seek to leave unaltered the original legal, equitable and contractual rights of the Secured Creditors. The Debtors solicited acceptances of the Pre-Packaged Plan prior to the Petition Date and assert that each impaired class has accepted the Pre-Packaged Plan in the requisite numbers and amounts.

K.   The Debtors require the use of the Cash Collateral for the maintenance and preservation of the Debtors' property, for the operation of their businesses in the ordinary course, and for the payment of the expenses attendant thereto. Without authorization to use Cash Collateral, the Debtors' continued business operations would be jeopardized to the detriment of the Debtors, the Debtors' creditors and the estates.

L.   Evidence has been submitted to the Court showing that the value of the Collateral substantially exceeds the Secured Debt.

M.   Because the value of the Debtors' assets is in excess of the amount Debtors' Secured Debt, the Debtors are entitled to use the Cash Collateral. Moreover, the Secured Creditors are willing to consent to the use of the Cash Collateral by the Debtors upon the terms and conditions of this Final Agreed Order; the CIT Lenders having given their consent by executing below. The Debtors are willing to agree to the terms and conditions for use of Cash Collateral as set forth in this Final Agreed Order.

N.   The terms and conditions of the Final Agreed Order are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and the Final Agreed Order is enforceable pursuant to its terms.

O.   On February 10, 2004, the Court entered the Interim Agreed Order Pursuant to 11 U.S.C. §§ 361 and 363, Fed. R. Bankr. P. 4001(b) and 9014, and Del.

Bankr. L. R. 4001-2 Authorizing Debtors' Use of Cash Collateral and Providing Adequate Protection Therefor (the "Interim Agreed Order").

P.  Adequate notice of the hearing on the Motion and the relief requested in the Final Agreed Order has been given to parties in interest including: (1) the Office of the United States Trustee for the District of Delaware, (2) counsel to CIT, (3) counsel to JPMC, (4) counsel to the Unofficial Noteholders' Committee (representing ninety-one percent of the outstanding Senior Secured Subordinated Notes), (5) counsel to the Unofficial Committee of Music and Video Vendors, and (6) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions.

Q.  There is good cause and it is in the best interests of the Debtors' estates and their creditors that the Debtors be authorized to use Cash Collateral pursuant to the terms and conditions of this Final Agreed Order.

Based upon the foregoing findings and conclusions, and upon the record made before this Court, and good and sufficient cause appearing therefore:

IT IS HEREBY ORDERED that:

1.  Subject to the terms and conditions set forth herein, the Debtors are authorized to use Cash Collateral to provide for general operating purposes and the costs and expenses of administering these bankruptcy cases subject to and as provided in the Amended CIT Loan Agreement, as defined below, and the order approving the same. This Final Agreed Order hereby amends and restates the Interim Agreed Order, and all rights and interests afforded Secured Creditors pursuant to the Interim Agreed Order shall remain in full force and effect.

2.  As adequate protection for and to the extent of any diminution in value of the CIT Lenders' interests in the Collateral arising from the use of the Collateral pursuant to Bankruptcy Code Section 363(c) (the amount of such diminution is referred

6

to herein as the "CIT Adequate Protection Obligations"), CIT and the CIT Lenders are hereby granted (effective as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid, binding, enforceable and perfected replacement and additional liens, as enforceable and of the same validity, priority and extent as the CIT Liens in the postpetition assets of the Debtors and their estates of the same type as the prepetition assets of the Debtors encumbered by the CIT Liens to secure an amount equal to the aggregate diminution (if any) in value of the Collateral arising as a result of the Debtors' use of Collateral.

       3.     As adequate protection for and to the extent of any diminution in value of the JPMC Lenders' interest in the Collateral arising from the use of the Collateral pursuant to Bankruptcy Code Section 363(c) (the amount of such diminution is referred to herein as the "JPMC Adequate Protection Obligations"), JPMC and the JPMC Lenders are hereby granted (effective as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid, binding, enforceable and perfected replacement and additional liens, as enforceable and of the same validity, priority and extent as the JPMC Liens and subject in all respects to the terms and conditions of the Intercreditor Agreement, in the postpetition assets of the Debtors and their estates of the same type as the prepetition assets of the Debtors encumbered by the JPMC Liens to secure an amount equal to the aggregate diminution (if any) in value of the Collateral arising as a result of the Debtors' use of Collateral.

       4.     The Secured Creditors shall not be required to file financing statements or other documents in any jurisdiction or take any other action (including taking possession of property or certificates of ownership) in order to validate, perfect or otherwise enforce the security interests and liens granted to the Secured Creditors by this Final Agreed Order. If any of the Secured Creditors, in their sole discretion, should

7

choose to file financing statements or other documents or otherwise confirm perfection of such security interests and liens, the Secured Creditors are authorized to effect such filings or recordations and all such financing statements or similar documents shall be deemed to have been filed or recorded on the date of the entry of the Interim Agreed Order. The Secured Creditors are hereby authorized to file this Final Agreed Order as evidence of the CIT Lenders' and the JPMC Lenders' security interests and liens in lieu of a financing statement or other similar document.

5.   As used herein, the term Carveout shall mean (i) the unpaid fees of the clerk of the Bankruptcy Court and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and 1930(b) (the "Statutory Fees"), (ii) prior to the occurrence of an Event of Default (as defined below), allowed professional fees and disbursements (the "Professional Fees and Disbursements") incurred by the professionals retained by the Debtors or any statutory committee appointed in the chapter 11 cases, and (iii) following the occurrence of an Event of Default, Professional Fees and Disbursements not to exceed $250,000.00 in the aggregate, plus unpaid Professional Fees and Disbursements previously incurred prior to the occurrence of such Event of Default. Notwithstanding anything to the contrary herein, the Debtors are authorized to satisfy obligations covered by the Carveout from Collateral or Cash Collateral, which authorization shall survive termination of this Final Agreed Order or an Event of Default hereunder.

6.   As additional adequate protection, CIT and the CIT Lenders shall further be entitled to an administrative claim with priority and as set forth in Section 507(b) of the Bankruptcy Code. Subject to the Carveout and the administrative claims granted to the lenders (the "DIP Lenders") party to that certain Amended and Restated Loan and Security Agreement, dated as of February 9, 2004 (the "Amended CIT Loan Agreement"), the CIT Adequate Protection Obligations shall constitute expenses of administration under Bankruptcy Code Sections 503(b)(1), 507(a) and 507(b) with priority in payment over any and all other administrative expenses of the kinds specified

8

RLF1-2711038-1

or ordered pursuant to any provision of the Bankruptcy Code, including without limitation Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b) and, to the extent permitted by applicable law, Bankruptcy Code Section 726, and shall be at all times senior to the rights of the Debtors, any successor trustee or any creditor in these chapter 11 cases or, to the extent permitted by applicable law, any subsequent proceeding under the Bankruptcy Code.

7. As additional adequate protection, JPMC and the JPMC Lenders shall further be entitled to an administrative claim with priority and as set forth in Section 507(b) of the Bankruptcy Code. Subject to the Carveout, the administrative claims granted to the DIP Lenders and the administrative claims granted to CIT and the CIT Lenders in Paragraph 6 of the Interim Agreed Order and Paragraph 6 of this Final Agreed Order, the JPMC Adequate Protection Obligations shall constitute expenses of administration under Bankruptcy Code Sections 503(b)(1), 507(a) and 507(b) with priority in payment over any and all other administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b) and, to the extent permitted by applicable law, Bankruptcy Code Section 726, and shall be at all times senior to the rights of the Debtors, any successor trustee or any creditor, in these chapter 11 cases or, to the extent permitted by applicable law, any subsequent proceeding under the Bankruptcy Code.

8. Notwithstanding anything to the contrary herein, the administrative claims and security interests granted to the Secured Creditors herein shall not include, apply to or encumber any avoidance actions or proceeds thereof and other claims for relief of the Debtors arising under Bankruptcy Code Sections 544, 545, 547, 548, 550, 551 and 553.

9. Notwithstanding anything to the contrary herein, any and all rights, security interests, liens and/or claims granted herein to the Secured Creditors shall be

9

RLF1-2711038-1

subject and subordinate to any and all rights granted to the DIP Lenders under the Amended CIT Loan Agreement. All rights and benefits under the Intercreditor Agreement are hereby preserved and such rights and benefits shall apply to the CIT Indebtedness, the CIT Liens and any postpetition extensions of credit by CIT or the CIT Lenders to the Debtors.

10. The terms and provisions of this Final Agreed Order shall be binding upon and inure to the benefit of CIT, the CIT Lenders, JPMC, the JPMC Lenders, the Debtors and their successors and assigns, including but not limited to any trustee appointed in a chapter 7 or chapter 11 case, any superseding case or any case related hereto. The terms and conditions of this Final Agreed Order shall survive the entry of an order converting these cases from chapter 11 to chapter 7, the appointment of any trustee in these cases or in any ensuing chapter 7 bankruptcy cases should conversion to chapter 7 occur, the confirmation of a Pre-Packaged Plan of reorganization, or dismissal of these bankruptcy cases.

11. Each of the following shall constitute an event of default under this Final Agreed Order which shall result in the termination of the Debtors' authority to use Cash Collateral hereunder upon written notice by CIT (an "Event of Default"):

    a. The entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;

    b. The entry of an order dismissing the Debtors' chapter 11 cases;

    c. The entry of an order in these chapter 11 cases appointing a chapter 11 trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the business of any of the Debtors, which order is not stayed within ten (10) business days thereof; and

    d. The occurrence of an event of default under the Amended

CIT Loan Agreement, that has not been waived by CIT or cured by the Debtors, that results in the termination of the CIT Lenders' commitments to provide financing under the Amended CIT Loan Agreement that has not been stayed.

12. The Debtors are authorized and directed to perform all acts and execute such other documents, instruments and agreements necessary to effectuate the terms and conditions of this Final Agreed Order.

13. Notwithstanding any stay, modification, reversal or vacatur of this Final Agreed Order, all uses of the Cash Collateral and all CIT Adequate Protection Obligations and JPMC Adequate Protection Obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal or vacatur, shall be governed in all respects by the original provisions hereof and the Secured Creditors shall be entitled to all rights privileges and benefits, including the liens and administrative claims, granted herein.

14. The authorization to use Cash Collateral as provided herein shall terminate on the earlier of the following dates: (i) the occurrence of the Effective Date (as defined in the Pre-Packaged Plan) under the Pre-Packaged Plan and (ii) the occurrence of an Event of Default, but may be extended by CIT in its discretion.

15. Nothing in this Final Agreed Order shall be deemed or construed to limit, restrict, hinder, or delay the liens, interests, rights, remedies, and privileges in favor of the DIP Lenders and/or the Agent under the Amended CIT Loan Agreement pursuant to any orders of the Court approving the Amended CIT Loan Agreement and related documents (the "Postpetition Financing Orders"), and to the extent of a conflict or inconsistency between the terms and provision of this Final Agreed Order, on the one hand, and any Postpetition Financing Order, on the other hand, the terms and provisions of the Postpetition Financing Order shall control in all respects with respect to the rights, remedies and privileges of the DIP Lenders and/or the Agent under the Amended CIT

11

Loan Agreement.

Dated at Wilmington, Delaware, this 27 day of FEB, 2004.

_____
UNITED STATES BANKRUPTCY JUDGE

Consented and agreed to:

BUCHALTER, NEMER, FIELDS & YOUNGER

By: _____ /Reed Smith LLP
Attorneys for The CIT Group/Business Group, Inc., as administrative agent and collateral agent for the CIT Lenders

13